E-FILED
Friday, 10 January, 2014  04:11:03 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD D. STACHOWIAK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12-1472 |
| CAROLYN COLVIN, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

# **O R D E R**

This matter is before this Court on Plaintiff, Richard D. Stachowiak's ("Stachowiak"), Motion for Summary Judgment [11] and Defendant, Carolyn Colvin's ("Commissioner"), Motion for Summary Affirmance [15].  This Order follows.

## BACKGROUND

On December 7, 2009, Stachowiak filed an application for disability insurance benefits, alleging an onset date of June 15, 2009.  These claims were initially denied on June 11, 2010 and upon reconsideration on September 22, 2010.  Stachowiak then filed a written request for hearing on November 29, 2010, which was held on June 9, 2011.  Following the hearing, an Administrative Law Judge ("ALJ") denied the application on June 20, 2011.  Review was denied by the Appeals Council on October 16, 2012, making the ALJ's decision final.

At the time of the hearing, Stachowiak was 32 years old and married with two children. (R38) He had worked as a truck driver and also helped as a farm hand on the weekends.  (R43)

He indicated that he hurt his back while lifting a 30 lb. amplifier out of a pickup truck and then reinjured it while attempting to break up a fight between two other men. (R35) He attends group therapy 2-3 times per month. (R36) Although he smokes about a pack a day, he has not had an alcoholic drink for more than three years. Id. Stachowiak has a cell phone, computer, and Facebook account. (R37) He attends church at least every other Sunday. (R38) His driver's license was suspended for delinquency in paying child support. Id.

Stachowiak helps around the house by vacuuming, cooking, and doing dishes; he often needs to sit and take a break before completing his task. (R39) He also watches his 21-month-old granddaughter with some help from his mother and daughters. Id. When she isn't working at her part-time job, his mother comes over and helps with the cooking, cleaning, and taking care of the baby. (R48) He complains that he is constantly tired and dozes off during the day. (R46)

In addition to his back pain, he has numbness in his right leg and hand, as well as a short attention span. (R39) He has had admissions for mental health issues. In March 2011, he was admitted first for a nervous breakdown and then later for an attempted suicide. (R41) He admitted to having suicidal thoughts on a daily basis. (R45) Stachowiak has also experienced anger issues, as well as both auditory and visual hallucinations since sometime in 2010. (R42, 45, 51)

At the hearing, a Vocational Expert ("VE") testified. The VE stated that he had reviewed the exhibits in the file dealing with Stachowiak's prior work history and was present for the hearing testimony. The ALJ gave the VE the following hypothetical:

> Q Have you had the opportunity to review the record as to Mr. Stachowiak's prior work and vocational background?
>
> A Yes, I have.

Q Do you have any questions about the work?

A No.

Q And would you please describe it both as he might have performed it and as described in the DOT?

A The record shows that the gentleman was a deliverer for [INAUDIBLE] company from '96 to '97. Work is classified as medium with an SVP of 2, a DOT of 299.477-010. After that, he was an over-the-road driver from '98 to '07, classified as medium with an SVP of 4 and a DOT of 905.663-014. And also from '94 to '96, he was a fertilizer loader. That was classified as medium with an SVP of 3 and a DOT of 939.686010.

Q And that was, in terms of exertion?

A Medium.

Q And skill level?

A 3.

Q Okay. I'm going to ask that you assume an individual of the claimant's age, education, and work experience. The individual would have the residual functional capacity to perform light work as defined in the regulations. Individual could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. Individual could frequently balance; occasionally stoop, kneel, crouch, and crawl. Individual could frequently reach in all directions, including overhead, with both upper extremities, otherwise would have no limitations in the use of the upper extremities. Individual could perform simple, repetitive, and routine work tasks. Would such an individual be able to perform any of the claimant's past relevant work?

A No, ma'am. All of his past jobs were medium in nature, and two of the three were semi-skilled. So he would not be able to do any of his past work activity.

Q Would there be other jobs?

A At the light, unskilled level, one would expect him to be able to perform several jobs, including work as a housekeeping cleaner, classified -- these individuals clean industrial facilities -- work was classified as light with an SVP of 2. It involves simple cleanup around machinery and emptying trash, has a DOT of 323.687-014. It's classified as light with an SVP of 2. In the state of -in the -- in the national economy, there are over 200,000; in the state of Illinois, over 3,000. Individual could be a laundry worker again, light with an SVP of 2, a DOT of 302.685-010. In the national economy, there are over 300,000. They work in hotels, motels, hospitals, and commercial laundries. In the state of Illinois, there are over 5,000. And he could work as a cashier in a variety of settings, classified as light and unskilled with an SVP of 2, a DOT of 211.462-010. In the national economy, there are over than 2 million; in the state of Illinois, over 35,000.

Q I'm going to ask that you once again assume an individual of the claimant's age, education, and work experience. Individual would essentially have the residual functional capacity to perform the full range of sedentary work, as defined in the regulations. Individual could perform simple, repetitive, and routine work tasks. Would there be work for such an individual?

A At the sedentary level, there'd be a variety of jobs -- some factory jobs and some clerical. For example, he could be a surveillance system monitor, watching banks of television sets for illegal, inappropriate behavior; if he sees any, he notifies the security staff to investigate. Work is sedentary and unskilled in nature. Individual has a sit/stand option pretty much at will, as long as he's able to observe the television monitors has a DOT of 379.367-010. In the national economy, there are over 180,000. They work in hospitals, department stores, security installations. In the state of Illinois, there are over 5,000. The individual could function as an order clerk -- sedentary and unskilled with an SVP of 2, a DOT of 209.567-014. In the national economy [coughs] excuse me -- in the national economy, there are over 80,000. In the state of Illinois, there are over a thousand. And the individual could function as a table worker, classified as sedentary with an SVP of 2. These individuals pick up

small items to see if they meet manufacturers' specifications as to size, color, and shape; and make decisions as to whether the material is acceptable or needs to be reworked -- has a DOT of 739.687-102. In the national economy, there are over 25,000; in the state of Illinois, over 500.

Q If I were to further limit this individual to a low stress work environment -- by that, I would mean occasional decision-making, occasional changes in the work setting, and no strict production quotas -- what effect would that have on the numbers and types of jobs you cited?

A On the light jobs, it would have no impact since there are no quotas on either the laundry worker or the light custodial work or the cashier. In the sedentary jobs, the table worker would have a quota. The other two would not. So I'd have to eliminate the table worker but not the other two.

Q Would there be other jobs at the sedentary level that you could offer in place of the table worker job?

A There'd be an addresser, where the individual would put labels on magazines, newspapers, books that would be mailed out -- classified as sedentary and unskilled with an SVP of 2, a DOT of 209.587-010. In the national economy, there are over 50,000. In the state of Illinois, there are over 800.

Q Okay. Now, if I were to limit this individual to occasional contact with the general public and occasional interaction with supervisors and coworkers, would there be jobs for such an individual?

A The laundry worker and the housekeeper would have no contact with the public and only occasional contact with either coworkers or supervisors. So that would be acceptable. The cashier on the other hand -- 80 to 90 percent of them have public contact. So I would essentially eliminate that job. In terms of the surveillance system monitor, the order clerk, the addresser -- none of them have contact with the public, so I'd keep all of those.

5

>Q If an individual were likely to be off task for 25 percent of the workday due to a combination of symptoms, medications, general inability to concentrate, would such an individual be able to sustain competitive employment?
>
>A No, ma'am. Any off time off the job in excess of 2 or 3 percent would be considered excessive, and they'd be terminated.
>
>ALJ: Nothing further, Mr. Wilson.
>
>**Examination of vocational Expert by Claimant's Attorney**
>
>Q Mr. Grenfell, if an individual averaged two unexcused absences a month, would any jobs be available?
>
>A The first time it occurred, the individual would probably get a warning and -- but if it occurred month to month to month so every month you have two days -- an extra two days off, he'd be terminated as being unreliable.
>
>ATTY: Okay. Thank you, sir. I don't have anything else.

(R64-70)

On June 20, 2011, the ALJ issued a written decision finding that Stachowiak had the following severe impairments: degenerative disc disease, obesity, and major depressive disorder. However, none of these impairments or combinations of impairments was found to meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P. The ALJ found that Stachowiak had the residual functional capacity to perform sedentary work except that he is limited to work tasks that are simple, repetitive, and routine in nature as a result of his mental impairment. Considering his age, education, work experience, and residual functional capacity, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that he could perform, and his disability claim was therefore denied.

## DISCUSSION

In order to be entitled to SSI and/or DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3,

stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

Stachowiak argued that the ALJ erred at Step 2 by failing to recognize that he also has severe impairments including bipolar disorder and/or schizoaffective disorder and chronic pain syndrome and that ignoring these impairments also resulted in a flawed RFC and hypothetical. He notes that Dr. Sheth diagnosed him as shizoaffective and that the state agency examiner opined that he had experienced one or two episodes of decompensation. Although the chronic

pain syndrome is discussed and discounted by the ALJ, there does not appear to be any consideration of his bipolar/schizoaffective disorder or borderline personality disorder despite the many references to these diagnoses in the medical records. The discussion also states that "plaintiff has experienced no episodes of decompensation, which have been of extended duration," without referencing or giving an explanation for discounting the findings of Linda Lanier, PhD. Dr. Lanier completed a Psychiatric Review Technique form and concluded that Stachowiak had moderate difficulties in maintaining social functioning and had experienced one or two such episodes of decompensation prior to April 23, 2010. (R539) This is somewhat contrary to the ALJ's assertion that his condition was only exacerbated in early 2011 due to situational stressors. While the ALJ's bottom line conclusion may ultimately be affirmed, the Court finds the ALJ's discussion and explanation of Stachowiak's mental conditions and limitations to be so conclusory and lacking as to warrant a remand.

Given the multiple references in the record to Stachowiak's mental diagnoses and limitations, the Court believes more detailed analysis to be appropriate, which impacts the finding at Step 2, the ability to meet or equal a listing, the RFC, and the hypothetical question. There is no detailed discussion of the evidence; rather a few pages in the record appear to have been selectively cited to constitute the "analysis." While the Commissioner's brief contains a detailed discussion and explanation of this evidence, it does not serve as a substitute for appropriate analysis by the ALJ. As a result, the ALJ's "path of reasoning" cannot reasonably be traced.

"Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her

9

decision to permit meaningful judicial review." *Clifford v. Apfel*, 227 F.3d 863, 870–71 (7th Cir.2000). In other words, the ALJ must build an "accurate and logical bridge from the evidence to" his conclusion. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir.2002) (citation omitted). Thus, the ALJ's perfunctory analysis is not sufficient. This matter is remanded to the ALJ for further clarification of Stachowiak's mental impairments, including any impact that a more developed discussion would have on his RFC and the corresponding hypothetical.

Accordingly, for the foregoing reasons, Plaintiff's Motion for Summary Judgment [11] is GRANTED in that this matter is reversed and remanded for further consideration and elaboration pursuant to Sentence 4, and the Motion for Summary Affirmance [15] is DENIED. This matter is now terminated.

ENTERED this 10th day of January, 2014.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge